IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PENN NATIONAL INSURANCE CO., *et al.*   *

          Plaintiffs,      *

     v.             *      Civil Action No.  RDB-07-672

EASTERN HOMES, INC., *et al.*     *

          Defendants.   *

                 * * * * *

## MEMORANDUM OPINION

This declaratory judgment action arises out of a state law dispute in the Circuit Court for Howard County, Maryland, and comprehensive general liability insurance policies issued by Plaintiff insurers, American Modern Home Insurance Group ("American Modern") and Penn National Insurance Company ("Penn National") (collectively, "Plaintiffs"), to Defendant Eastern Homes, Inc. ("Eastern Homes") and its agents.  In or shortly after April 2004,[1] several mobile homeowners filed a class action suit in the Circuit Court for Howard County asserting claims grounded in tort, contract, and equity, as well as Maryland and federal statutes, against Eastern Homes, the company that sold and installed their homes.  A number of individuals also filed similar claims separate and apart from the class action suit.[2]  These state actions in the Circuit Court for Howard County have been at issue for over three years.

---

[1] Plaintiffs' Complaint identifies April 24, 2004 as the date the class action suit was filed (Compl. ¶ 14), while Defendant homeowners date the filing as August 2004.  (Defs.' Mem. Supp. Mot. Dismiss 3.)

[2] Collectively, these lawsuits will be referred to in this Memorandum Opinion as the "underlying suit" or "state court action."

The three-count Complaint in this case was filed on March 14, 2007 and seeks a Declaratory Judgment of this Court that Plaintiff insurers are not obligated to defend or indemnify their insured as to three categories of homeowners affected by the underlying state lawsuit: (1) the certified class in the underlying class action suit and "all others similarly situated"; (2) the non-certified named plaintiffs in the underlying class action suit; and (3) the individual claimants not named in the underlying class action complaint and not included as part of the certified class.  Penn National and American Modern contend that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and seek a declaratory judgment under 28 U.S.C. § 2201.  They have named as defendants Eastern Homes and its agents, Gilbert A. Mobley and what is now the Estate of Joyce Mobley, as well as several Eastern Homes mobile homeowners ("Homeowners" or "Defendants").  Pending before this Court is the Homeowners' Motion to Dismiss[3] based on the doctrines of *forum non conveniens* and abstention in deference to the state court.[4]  The parties' submissions have been reviewed and a telephonic hearing was held on November 14, 2007.  No further formal hearing is necessary on this motion.[5]  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below, the Defendants' Motion to Dismiss is GRANTED.

---

[3] Eastern Homes did not join in the Motion to Dismiss or submit its own motion.

[4] The Defendants have also moved for dismissal pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to join a party under Rule 19, and misjoinder under Rule 21. However, in light of this Court's ruling on the issue of abstention, these issues need not be reached.

[5] This Court has held earlier telephone conferences off the record with counsel in connection with their submission of memoranda.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff American Modern Home Insurance Group issued comprehensive general liability ("CGL") policies to Defendant Eastern Homes, Inc. from September 26, 1992 to January 27, 1999. (Compl. ¶ 13.)  Similarly, Plaintiff Penn National Insurance Company issued CGL policies to Eastern Homes from January 27, 1999 to January 27, 2006.  (*See id.* ¶ 12.)  Several mobile homeowners filed a class action lawsuit on or about April 24, 2004 in the Circuit Court for Howard County, Maryland against Eastern Homes, Gilbert A. Mobley, Joyce Mobley,[6] and other parties not relevant here.  (*Id.* ¶ 14.)  Other mobile homeowners also brought individual suits against Eastern Homes independent of the class action suit.  (*See id.* ¶ 16.)  The class action plaintiffs moved for class certification of two distinct classes differentiated on the basis of when their claims arose, using August 25, 2000 as the dividing line.  (*Id.* ¶ 20.)  Only those individuals whose claims arose after August 25, 2000 were certified as part of the class.  (*Id.* ¶ 21.)

The state court lawsuits brought in the Circuit Court for Howard County involve thirteen separate causes of action.  (*Id.* ¶ 19.)  In general, the claims against Eastern Homes include allegations that the homes were defectively installed and contained faulty components.  (*See id.* ¶ 23.)  Eastern Homes and the Mobleys tendered defense of the class action suit and individual suits to the Plaintiffs.  (*See id.* ¶¶ 15-16.)  Plaintiffs have been defending some or all of the claims in these suits pursuant to insurers' reservation of rights letters.  (*Id.* ¶ 17.)  Counsel for the parties have represented to this Court that that state action has been assigned to Judge Lenore

---

[6] The Estate of Joyce Mobley was substituted as a party in an amended version of the complaint in that action.  (Compl. ¶ 14.)

Gelfman of the Circuit Court for Howard County who has great familiarity with the case which has apparently resulted in a settlement of the underlying class action lawsuit.

On August 24, 2004, Defendant Homeowners filed suit in the Circuit Court for Howard County as Plaintiffs against Eastern Homes.  Penn National and American Modern filed the instant lawsuit in this Court on March 14, 2007 against Eastern Homes, Inc., Gilbert Mobley, the Estate of Joyce Mobley, Jason W. Royal, Leonard and Melinda Stewart, Sharon E. Stanhope, Donald and Antoinette Scaran, Cordelia and John Walser, Lawrence Corwin, Anna Azni, Samuel Crouch, Nancy Defina, Sheldon McNeil, Joshua Mendoza, John Morrill, Michael Neville, Beverly Payne, Mary Purdham, Jeffrey Quade, Cecelia Queen, Johnner Reilly, Hamilton Shoop, Christy Stanton, Thomas Tarmon Trust, William Thomas, Christopher Weiffenbach, John Cain, Marlene Carlton, Helen Taylor, and "All Others Similarly Situated."  Plaintiffs contend that this Court has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2001, and 28 U.S.C. § 1332.[7]  The Plaintiffs seek a declaratory judgment that the damages and claims alleged in the state court lawsuits are not covered by the relevant insurance polices.  (*Id.* ¶ 24.)  They also ask this Court to determine whether and to what extent there is coverage under the CGL policies with respect to any owed duty to defend or indemnify their insureds for any damages awarded in the lawsuits.  (*Id.*)

The Complaint contains three counts seeking declaratory judgment as to the three categories of parties in the underlying lawsuits: Count I – the certified class and "all others

---

[7] Plaintiff Penn National is an insurance company formed under the laws of and based in Pennsylvania (Compl. ¶ 1), and Plaintiff American Modern is an insurance company formed under the laws of and based in Ohio (Compl. ¶ 2).  Defendant Eastern Homes is a corporation with its principle place of business located in Maryland (Compl. ¶ 9), and the other Defendants reside in Maryland. (Compl. ¶¶ 3, 5, 7, 8.)

similarly situated" in the Homeowners' class action complaint; Count II – the non-certified

named plaintiffs in the class action suit; and Count III – the individual claimants not named in

the class action complaint or included as part of the certified class.  (*See id.* ¶¶ 29, 33, 37.)

Defendant Homeowners filed a Motion to Dismiss (Paper No. 9) on May 7, 2007, arguing that

the matter should be dismissed as to these parties (1) under the doctrine of *forum non*

*conveniens,* because there is an adequate alternative forum and the balance of public and private

interests favor dismissal, and (2) on the basis that the underlying claimant Homeowners are not

necessary parties to the action at this time and that other necessary parties were not joined and if

they were, diversity jurisdiction would no longer exist.

<u>APPLICABLE PRINCIPLES OF LAW</u>

The common-law doctrine of *forum non conveniens* is a permissive power courts use to

decline exercising jurisdiction.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).

> A federal court has discretion to dismiss a case on the ground of
> forum non conveniens "when an alternative forum has jurisdiction to
> hear [the] case, and . . . trial in the chosen forum would establish . .
> . oppressiveness and vexation to a defendant . . . out of all proportion
> to plaintiff's convenience, or . . . the chosen forum [is] inappropriate
> because of considerations affecting the court's own administrative
> and legal problems."

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 127 S. Ct. 1184, 1190 (2007) (quoting *Am.*

*Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994) (alterations in original)).  The doctrine

generally "has continuing application [in federal courts] only in cases where the alternative

forum is abroad," *American Dredging Co.,* 510 U.S. at 449 n.2, "and perhaps in rare instances

where a state or territorial court serves litigational convenience best."  *Sinochem Int'l Co.*, 127 S.

Ct. at 1190 (citation omitted).  Its application is appropriate where trial in a plaintiff's chosen

forum imposes a heavy burden on the defendant or the court.  *Piper Aircraft Co. v. Reyno*, 454

U.S. 235, 249 (1981); *see also Sinochem Int'l Co.*, 127 S. Ct. at 1191.  Courts assess a "'range of

considerations, most notably the convenience to the parties and the practical difficulties that can

attend the adjudication of a dispute in a certain locality.'"  *Sinochem Int'l Co.,* 127 S. Ct. at 1190

(quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996)).

Courts have discretion to dismiss an action under this principle "when the relevant public

and private interests strongly favor trial in an alternative forum."  *Brown v. Stallworth*, 235 F.

Supp. 2d 453 (D. Md. 2002) (citing *Piper Aircraft Co.*, 454 U.S. at 255; *Kontoulas v. A.H.

Robins Co.*, 745 F.2d 312, 315 (4th Cir. 1984)).  Where, as here, the plaintiff's choice is not its

home forum, the presumption in plaintiff's favor that the chosen forum is appropriate applies

with less force because in such cases it is less reasonable.  *Sinochem Int'l Co.*, 127 S. Ct. at 1191

(quoting *Piper Aircraft Co.*, 454 U.S. at 255-56).  Nevertheless, courts should rarely disturb the

plaintiff's choice of forum "'unless the balance is strongly in favor of the defendant. . . .'"

*Ferruzzi Italia, S.p.A. v. Trade & Transp., Inc.,* 683 F. Supp. 131, 134 (D. Md. 1988) (quoting

*Gulf Oil Corp.*, 330 U.S. at 508).  A defendant bears the initial burden of showing that the

chosen forum is inconvenient and that another exists that is more appropriate.  *Id.* at 135.

DISCUSSION

The Defendant Homeowners have moved to dismiss this case on *forum non conveniens*

grounds.  The threshold question in this analysis is whether there is an adequate alternative

forum.  *Piper Aircraft Co.*, 454 U.S. at 254 n.22.  Defendants bear the burden of showing such a

forum exists.  *Ferruzzi*, 683 F. Supp. at 135 (citing *Kontoulas*, 745 F.2d at 315).  Although

Defendants in this case have not submitted anything other than a conclusory statement that there

6

is an adequate forum, this requirement is generally satisfied where the defendant is amendable to process, *id.*, and the parties coming within the forum's jurisdiction will not be deprived of all remedies or treated unfairly.  *Fid. Bank PLC v. N. Fox Shipping N.V.*, No. 06-1299, 2007 U.S. App. LEXIS 16793, *14 (4th Cir. July 13, 2007) (citing *Mercier v. Sheraton Int'l Inc.*, 935 F.2d 419, 424 (1st Cir. 1991)).  There is already a case between these parties in state court, which implies each of these elements is satisfied, and Plaintiffs have not advanced any reasons to suggest otherwise.  Thus, this threshold requirement of demonstrating an adequate forum is satisfied.  Next, the Court must weigh private and public interests.  As the moving party, the Defendants continue to bear the burden of providing "enough information to enable the District Court to balance the parties' interests."  *Piper Aircraft Co.*, 454 U.S. at 258.

### A.    Private Interests

Defendants have not satisfied their burden of providing sufficient information to tilt the balance of the parties' private interests in their favor.  Examples of the litigants' private interests that this Court must consider include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp.*, 330 U.S. at 508.  Questions of enforcibility of an obtained judgment and "relative advantages and obstacles to fair trial" may also be taken into account.  *Id.*  Although the Defendants have identified the factors to be considered, they have not substantiated their claim that the factors lean in their favor.

As an illustration, Defendants have "neither identified the witnesses nor proffered the substance of the testimony of any of the witnesses nor submitted any affidavits explaining to the Court why and to what extent the witnesses will be inconvenienced if the case proceeds in this district." *Cole-Tuve, Inc. v. Am. Mach. Tools Corp.*, 342 F. Supp. 2d 362, 370 (D. Md. 2004) (citing *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 712 (D. Md. 2002)). In fact, as in *Cole-Tuve*, *Inc.*, Defendants have "not offered any evidence of inconvenience whatsoever." *Id.* In the absence of evidence to the contrary, any difference in costs associated with commuting to this Court in Baltimore as compared to the court in Howard County is *de minimus*, and no other inconveniences seem apparent.

In contrast, Plaintiffs have articulated specific reasons against finding inconvenience including that Defendants live within reasonable proximity to this Court and that all sources of evidence, including the mobile homes, are located nearby and are readily accessible. In balancing the negative factors such as inconvenience and the numerous positive factors—access to evidence, costs, compulsory process for attendance of unwilling witnesses—this Court, without any concrete allegations suggesting otherwise, finds that the parties' private interests favor keeping this case in this Court. Thus, the public interests must be considered.

### B.     Public Interests

The Defendants' *forum non conveniens* argument is essentially based on the fact that there is an underlying state cause of action in the Circuit Court for Howard County. (Defs.' Mem. Supp. Mot. Dismiss 2-3.) The Supreme Court has previously held that "the pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800,

817 (1976) (internal quotations and citation omitted).  The Supreme Court's opinion in *Colorado River* has essentially been recognized as establishing a principle that federal courts should abstain out of deference to pending state court proceedings only in exceptional circumstances. *See* Erwin Chemerinsky, Federal Jurisdiction § 14.2 (5th ed. 2007).  Specifically, the Defendants have not met their burden in this case of demonstrating that "public interests" favor hearing this case in an alternate forum under the doctrine of *forum non conveniens.  See, e.g., Cunningham v. Ford Motor Co.*, 413 F. Supp. 1101, 1105 (D.S.C. 1976) (stating that the court was "unaware of any authority, and defendant has cited none, for the proposition that any form of the doctrine of forum non conveniences can justify dismissal of a federal court action because a state court action brought in the same location would have been more convenient for the defendant.").

In conclusion, Defendants have failed to articulate any compelling reasons for dismissing this matter on *forum non conveniens* grounds.  However, this Court must address the broader considerations noted by the Supreme Court in *Colorado River* and the Fourth Circuit Court of Appeals in evaluating whether this Court should abstain in the exercise of its jurisdiction.

**C.    Abstention in Deference to the State Court Proceeding**

As noted above, Plaintiffs Penn National and American Modern assert that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states, and pursuant to 28 U.S.C. § 2201, the Federal Declaratory Judgment Act ("FDJA").  However, this Court has discretion to decline to exercise jurisdiction over declaratory judgment actions brought under the FDJA.  28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought." (emphasis added)); *see also Penn. Nat'l Mut. Ins. Co. v. Ely Wall & Ceilings, Inc*., Civ. Action No. 04-1576-RBH, 2006 U.S. Dist. LEXIS 13302, at *6 (D.S.C. Mar. 6, 2006).  In this case, the Plaintiffs seek a declaration that they owe no duty to defend or indemnify Eastern Homes in the underlying state actions.

In the *Colorado River* opinion noted above, the Supreme Court identified several factors for federal courts to consider "when determining whether the interests of wise judicial administration and a comprehensive disposition of the litigation outweigh the duty to exercise jurisdiction."  Chemerinsky, *supra*.  Those factors, which this Court must address, are: "the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums."  *Colo. River Water Conservation Dist*., 424 U.S. at 818 (internal citations omitted).  The Court explained that "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required."  *Id*. at 818-19.

In addition to the principles of abstention set forth by the Supreme Court in the *Colorado River* opinion, the United States Court of Appeals for the Fourth Circuit has articulated further standards to assist district courts in deciding whether to decline to entertain a declaratory action. "'In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.'"  *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 296 (4th Cir. 2005) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)).  A court's

discretion "is especially crucial when, as here, a parallel or related proceeding is pending in state

court." *Id.* at 297 (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942).  In particular,

> when an insurer comes to federal court seeking a declaratory
> judgment on coverage issues while the underlying litigation against
> its insured is pending in the state courts, considerations of federalism,
> efficiency, and comity should also figure into the discretionary
> balance, and may, in certain circumstances, require the federal court
> to refuse to entertain the action, even when the declaratory relief
> sought would serve a useful purpose.

*Nautilus Insurance Co. v. Winchester Homes*, 15 F.3d 371, 376 (4th Cir. 1994) (citing *Mitcheson*

*v. Harris*, 955 F.2d 235, 236 (4th Cir. 1992)); *see also Penn. Nat'l Mut. Ins. Co.,* 2006 U.S. Dist.

LEXIS 13302, at *9.  These considerations require this Court to examine four factors when

deciding whether to hear a declaratory judgment action when there is a pending state court

proceeding: (1) "whether the state has a strong interest in deciding the issues in its courts;" (2)

whether the state court would be a more efficient forum to resolve the issues; (3) "whether the

presence of 'overlapping issues of fact or law' might create unnecessary 'entanglement' between

the state and federal courts;" and (4) whether the federal action is merely "procedural fencing,"

*i.e.*, that the action is merely the product of forum-shopping.[8]  *New Wellington Fin. Corp.*, 416

F.3d at 297.

This Court addresses first the *Colorado River* factors in the context of this case.  The

need to avoid piecemeal litigation and the order in which the state and federal proceedings were

_____

[8] During the telephonic hearing held on November 14, 2007, counsel for Penn National
argued that there are no problematic state law issues in this case because *Lerner Corporation v.
Assurance Company of America*, 707 A.2d 906 (Md. Ct. Spec. App. 1998), sets forth the
appropriate law for declaratory judgment actions concerning insurance coverage.  However, that
case is distinguishable, because the declaratory judgment action had been filed in state court
rather than federal court, so the issue of a federal court stepping in to decide a matter of state law
was not present.

filed weigh against exercising jurisdiction in this case.  Here, the state action preceded the case

at bar by approximately three years, and the state court is far more familiar with the facts that

would be considered in resolving the insurance coverage issues presented to this Court.[9]  There

has been expert testimony provided concerning causation and coverage issues in the state court

proceeding.  (Def.'s Suppl. Mem. Supp. Mot. Dismiss 3.)  Eastern Homes goes further in its brief

submitted to this Court October 19, 2007 (Paper No. 30)[10] noting that resolution of the coverage

issue, which largely involves determination of the meaning of "occurrence," turns on whether

there was any negligence and whether the state court plaintiffs suffered consequential damages.

(*Id.* at 3.)  This Court holds that there is a strong interest in resolving all litigation in a single

court system where the judge is already intimately familiar with the relevant facts having

presided over the case for three years.  Mindful of the fact that insurers commonly turn to federal

courts to resolve insurance coverage issues while state court actions are pending, the unique facts

presented in this case lead this Court to conclude that this abstention is appropriate in this

particular case in the interest of "wise judicial administration" and "a comprehensive disposition

of the litigation."  Chemerinsky, *supra.*

---

[9] At the telephonic hearing held on November 14, 2007 and in Plaintiffs' Supplemental Memorandum of Law (Paper No. 31), Plaintiffs' counsel relied on the unpublished, per curiam decision of *American Modern Home Insurance Co. v. Reeds at Bayview Mobile Home Park, LLC*, 176 Fed. Appx. 363 (4th Cir. 2006), a declaratory judgment action in which the Fourth Circuit affirmed this Court's ruling that an insurance company owed no duty to defend or indemnify its insured in a parallel state court proceeding.  However, pursuant to the Fourth Circuit's Local Rule 36(c), unpublished opinions are not binding on this Court.  In addition, in that case, the declaratory judgment action had been filed in this Court less than a year after the state court action was filed.  In this case, by contrast, the federal declaratory judgment action was filed *three years* after the class action in the Circuit Court for Howard County.

[10] Eastern Homes submitted this brief as a supplemental to Defendant Homeowners' Supplemental Memorandum in Support of the Motion to Dismiss (Paper No. 29).

Turning to the factors under the Fourth Circuit analysis, the case at bar involves primarily the third factor concerning the risk that the issues in this action are inextricably tied to the claims in the underlying state action because they relate to a mix of tort and contract claims.  (Defs.' Mem. Supp. Mot. Dismiss 3, 5.)  The core question this Court must resolve is "whether the district court's efforts to decide the coverage issue would result in entanglement . . . with [the] state court proceedings by preempting critical factual findings that the state court will have to make" in adjudicating the underlying claims.  *Penn-America Ins. Co.*, 368 F.3d at 413.

Plaintiffs argue the issues presented are distinct in that the "Howard County cases involve issues of liability and damages, whereas this case poses questions of coverage which may ultimately require no factual determinations whatsoever."  (Pls.' Mem. Opp'n Mot. Dismiss 4 (emphasis added).)  Plaintiffs contend that the issue before this Court is whether the damages claimed in the underlying suit are covered by the policies at issue, an analysis involving a determination "as to whether there is an 'occurrence' that caused 'property damage' within the meaning of the policy and/or whether any of the policy exclusions apply."  (*Id.* at 6.)

Resolution of this declaratory judgment action requires this Court to determine whether the Plaintiffs owe duties to defend or indemnify their insured.  Under the duty to defend analysis examined first, this Court finds the issues presented are independent and separate.  Regarding the duty to indemnify, however, this Court holds that the issues are overlapping and could result in entanglement between this Court and the state court.

## A.      Duty to Defend

When analyzing whether an insurer owes a duty to defend under Maryland law, courts engage in a two-part inquiry to determine: 1) what the coverage is and what the defenses are

under the policy's terms and requirements; and 2) whether the allegations in the tort action potentially bring the tort claim within the policy's coverage. *Clendenin Bros. v. United States Fire Ins. Co.*, 889 A.2d 387, 393 (Md. 2006) (citing *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 438 A.2d 282, 285 (Md. 1981)). The first focuses on the policy language and requirements and is therefore purely a question of law, while the second centers on the allegations of the tort suit. *Id.*

This Court would not need to engage in any fact-finding to determine whether Plaintiffs owe a duty to defend since the task before the Court is "determining whether *the allegations* of the complaint [in the state court action], if proved, would bring the claim within the coverage of the [] policy." *Penn-America Ins. Co.*, 368 F.3d at 413 (emphasis in original). To accomplish this, the Court "need not make independent findings as to what actually occurred . . . but rather need only decide whether the [underlying complaint's] allegations, if proved, would bring the factual scenario within the scope of the exclusion." *Id.* With respect to the duty to defend, therefore, the issues in this declaratory judgment action are independent and separable from those of the underlying state court action.

### B.    Duty to Indemnify

The Plaintiffs' potential duty to indemnify, in contrast, will likely depend on resolution of facts alleged in the complaint in the state court action. *Id.*; *see also Steyer v. Westvaco Corp.*, 450 F. Supp. 384, 389 (D. Md. 1978) ("The question of whether the insurer has a duty to pay a final judgment against the insured turns on a comparison of the ultimate findings of fact concerning the alleged occurrence with the policy coverage."). In *Penn-America Insurance Co. v. Coffey*, the United States Court of Appeals for the Fourth Circuit distinguished the duty to

indemnify from the duty to defend, reasoning that "an insurer's duty *to indemnify* will depend on resolution of facts alleged in the complaint."  368 F.3d at 413 (emphasis in original).  Plaintiffs in this case concede that there is such a possibility here.  (Pls.' Mem. Opp'n Mot. Dismiss 4) ("[T]his case poses questions of coverage which *may* ultimately require no factual determinations whatsoever.") (emphasis added).

    In holding that there are at least some overlapping issues between the state and federal cases concerning the duty to indemnify, this Court finds *Mitcheson,* 955 F.2d 235 instructive in guiding this analysis.  In that case arising out of this District Court, a tenant brought state law claims in Maryland state court against an insured alleging injuries arising from lead poisoning. 955 F.2d at 236.  The insurer brought a related state law action in federal court seeking a declaration that it owed no duty to defend or indemnify its insured.  *Id.*  The United States Court of Appeals for the Fourth Circuit reversed the district court holding that the district court should have exercised its discretion to decline to entertain the action and grant the motion to dismiss. *Id.*  The court noted that all the questions in the declaratory action depended solely upon state law and the pending state court case involved only non-removable questions of state law.  *Id.* at 237-38.  The court also reasoned that both efficiency concerns and "the interest in promoting comity between federal and state courts" favored  "resolving all litigation stemming from a single controversy in a single court system." *Id.* at 239.  Finally, the court's holding also rested on the fact that, "as to the duty to indemnify, . . . 'deciding the issue of coverage would unnecessarily entangle the federal action with the state proceeding.'"  *Id.* at 240 (quoting the dissent).

This Court holds that the same concern cautions against exercising jurisdiction in the case at bar, because the issues related to the duty to indemnify here overlap with issues to be decided in the state action resulting in inappropriate entanglement between this Court and the Circuit Court for Howard County.  Plaintiffs seek a declaratory judgment that they "are not required to pay any judgment" in the underlying state actions, which contain, *inter alia*, common law tort and contract claims, as well as causes of action under the Maryland Consumer Protection Act and the Magnuson-Moss Warranty Act.  In resolving the coverage issue for each of those claims, this Court would likely have to consider several issues of fact and law that would overlap with the pending state court action, as in *Mitcheson*.  For example, this Court would have to decide whether statutory liability exists or if exceptions applied, as well as when the alleged injuries took place and whether they occurred during each applicable policy period for the insured.  Resolving these and other issues would create a risk of entanglement between this Court and the Howard County court.

Lastly, although Plaintiffs do not cite any cases concerning the interdependence and separability of the issues, they rely on cases in which this Court has applied Maryland law to resolve the state law issues presented in this litigation.  (Pls.' Mem. Opp'n Mot. Dismiss 6.)  However, while these cases demonstrate that this Court has resolved some of the state law issues presented herein, they are distinguishable, either because of factual distinctions or because no duty to indemnify was at issue.  *See IA Constr. Co. v. T & T Surveying, Inc.*, 822 F. Supp. 1213 (D. Md. 1993) (opinion did not make clear which duty was at issue and clear factual

distinctions); *Harbor Court Assocs. v. Kiewit Constr. Co.*, 6 F. Supp. 2d 449 (D. Md. 1998)

(duty to indemnify not at issue); *Reliance Ins. Co. v. Mogavero*, 640 F. Supp. 84 (D. Md. 1986)

(same).

    In conclusion, although a determination of the Plaintiffs' duty to defend does not present

great risk of overlap and entanglement, a resolution of the duty to indemnify issue involves

factual determinations relevant to the state court case.  Although this Court is unlikely to break

new ground or be faced with novel issues of state interest, comity and res judicata and collateral

estoppel concerns implicate important state interests.  Additionally, while this Court could

separate out certain issues such as by dismissing only the duty to indemnify issue, having one

court system resolve all relevant and related claims is more efficient and favorable.  Thus, this

Court will decline to exercise jurisdiction over this declaratory judgment action.  Accordingly,

Defendants' Motion to Dismiss in deference to the pending state court action is GRANTED.


## CONCLUSION

    For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.  An Order will

be filed separately.

Date:   November 19, 2007                              /s/

                                        _____

                                        Richard D. Bennett
                                        United States District Judge